AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| Melody Mathis | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| Tower Administrative Services, Inc. | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*  Tower Administrative Services, Inc.
8 Marticville Road
Lancaster, PA 17603

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   K. Clancy Boylan, Esq.
Morgan & Morgan Philadelphia, PLLC
2005 Market Street, 6th Floor
Philadelphia, PA 19103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                    *Server's signature*

                                                    _____
                                                    *Printed name and title*


                                                    _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MELODY MATHIS**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TOWER ADMINISTRATIVE SERVICES, INC.**,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**PROPOSED CLASS ACTION** |

Plaintiff Melody Mathis, individually and on behalf of the Class defined below of similarly situated persons ("Plaintiff and Class Members"), alleges the following against Defendant, Tower Administrative Services, Inc. ("Defendant"). The following allegations are based on Plaintiff's knowledge, investigations by Plaintiff's counsel, facts of public record, and information and belief:

**NATURE OF THE ACTION**

1.    Plaintiff seeks to hold Defendant responsible for the injuries that Defendant inflicted on Plaintiff and tens of thousands of others due to Defendant's egregiously inadequate data security, which resulted in the private information of Plaintiff and those similarly situated to be exposed to unauthorized third parties (the "Data Breach").

2.    Defendant, headquartered in Pennsylvania, is a company that provides services such as payment of insurance premiums and customer service for bi-weekly mortgage acceleration programs for clients throughout the United States.[1]

3.    The data that Defendant exposed to the public is unique and highly sensitive. For one, the exposed data included personal identifying information ("PII") like first name or first

---

[1] Tower Administrative Services, Inc. https://toweradmin.com/ (last accessed July 1, 2026).

1

initial and last name along with one or more of: address, Social Security number, and financial account information.[2] (collectively "Private Information").

4.      Plaintiff and Class Members provided this information to Defendant with the understanding Defendant would keep that information private in accordance with both state and federal laws.

5.      On or around June 23, 2026, Defendant announced the Data Breach to the public, revealing for the first time that on or around February 4, 2026, Defendant discovered that an unauthorized threat actor had accessed the Private Information of Plaintiff and Class Members. The actual Data Breach purportedly occurred on or around February 3, 2026.

6.      Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard Private Information and by failing to take necessary steps to prevent unauthorized disclosure of that information. Defendant's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

7.      Exacerbating the injuries to Plaintiff and Class Members, Defendant failed to provide timely notice to Plaintiff and Class Members—waiting more than four months to even begin notifying Plaintiff and Class Members of the Data Breach—depriving them of the chance to take speedy measures to protect themselves and mitigate harm.

8.      Today, the Private Information of Plaintiff and Class Members continues to be in jeopardy because of Defendant's actions and inactions described herein. Plaintiff and Class Members now suffer from a heightened and imminent risk of fraud and identity theft for years to

---

[2] *Notification of Data Security Incident*, Tower Administrative Services, Inc. https://toweradmin.com/notice.html (last accessed July 1, 2026).

come and now must constantly monitor their medical and financial accounts for unauthorized activity.

9.      The Private Information exposed in the Data Breach can enable criminals to commit a litany of crimes. Criminals can open new financial accounts in Class Members' names, take out loans using Class Members' identities, use Class Members' names to obtain medical services, use Class Members' Private Information to craft phishing and other hacking attacks based on Class Members' individual needs, use Class Members' identities to obtain government benefits, file fraudulent tax returns using Class Members' information, obtain driver's licenses in Class Members' names (but with another person's photograph), and give false information to police during an arrest.

10.     As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) anxiety, annoyance, and nuisance; (k) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information; and (l) disgorgement damages associated with Defendant's maintenance and use of Plaintiff's and Class Members' data for its benefit and profit.

11.    Through this action, Plaintiff seeks to remedy these injuries on behalf of herself and all similarly situated individuals whose Private Information was exposed and compromised in the Data Breach.

12.    Plaintiff brings this action against Defendant and asserts claims for negligence, negligence *per se*, unjust enrichment, breach of fiduciary duty, and breach of implied contract.

## PARTIES

13.    Plaintiff Melody Mathis is a natural person, resident, and citizen of Live Oak, Florida.

14.    Defendant Tower Administrative Services, Inc. is a company with its principal place of business located at 8 Marticville Road, Lancaster, Pennsylvania 17603.

## JURISDICTION AND VENUE

15.    This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. And minimal diversity is established because Plaintiff and members of the Nationwide Class are citizens of states different than Defendant.

16.    This Court has general personal jurisdiction over Defendant because Defendant's principal place of business is in Pennsylvania. Defendant also regularly conducts substantial business in Pennsylvania.

17.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District, and Defendant conducts substantial business in this District.

4

## FACTUAL ALLEGATIONS

*Defendant Collected and Stored the Private Information of Plaintiff and Class Members*

18.    Defendant is a company that provides that provides services such as payment of insurance premiums and customer service for bi-weekly mortgage acceleration programs for clients throughout the United States.[3]

19.    Plaintiff and Class Members provided their Private Information to Defendant as a requirement to obtain services from Defendant.

20.    Defendant collects Private Information from Plaintiff and Class Members in the ordinary course of business. Upon information and belief, this Private Information is then stored on Defendant's systems or systems that Defendant controls.

21.    Because of the highly sensitive and personal nature of the information Defendant acquires and stores, Defendant knew or reasonably should have known that it must comply with industry standards related to data security and all federal and state laws protecting Private Information and provide adequate notice if Private Information is disclosed without proper authorization.

22.    Plaintiff and Class Members provided their Private Information to Defendant as a condition of receiving services from Defendant, but in doing so, expected Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

*The Data Breach*

23.    On or about June 23, 2026, Defendant posted a "Notification of Data Security Incident," informing the public of the following:

---

[3] Tower Administrative Services, Inc. https://toweradmin.com/ (last accessed July 1, 2026).

5

A thorough investigation determined that certain information within our systems was subject to unauthorized access on or around February 3, 2026. Upon discovery, we worked to identify the data at risk and began a thorough review to determine the types of information that may have been impacted, the individuals to whom it relates, and up-to-date address information. On May 20, 2026, this process was completed and we worked to confirm sufficient contact information to provide notification to potentially affected individuals.

The types of information contained within the affected information varies by individual and may have included individuals' name, address, Social Security number, and/or financial account information.[4]

24.    Upon information and belief, Plaintiff's and Class Members' affected Private Information at the time of the Data Breach was accessible, unprotected, and vulnerable for acquisition and/or exfiltration by unauthorized individuals. Upon information and belief, and based on the notice provided by Defendant, the affected Private Information was not encrypted.

25.    Upon information and belief, Defendant was a target due to its status as an entity that collects, creates, and maintains Private Information.

26.    Defendant's notice of the Data Breach gives no details to Plaintiff or Class Members regarding the manner and means of how their Private Information was disclosed and leaves them wondering how they can protect themselves.

27.    Time is of the essence when highly sensitive Private Information is subject to unauthorized access and/or acquisition. The disclosed, accessed, and/or acquired Private Information of Plaintiff and Class Members is now likely available on the Dark Web. Hackers can access and then offer for sale the unencrypted, unredacted Private Information to criminals.

28.    Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their Private

---

[4] *Notification of Data Security Incident*, Tower Administrative Services, Inc. https://toweradmin.com/notice.html (last accessed July 1, 2026).

6

Information, especially their Social Security numbers and other sensitive information, onto the Dark Web. Plaintiff and Class Members face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing at least tens of thousands of Social Security numbers and other sensitive information.

29.    Defendant largely put the burden on Plaintiff and Class Members to take measures to protect themselves from identity theft and fraud.

30.    As another element of damages, Plaintiff and Class Members seek a sum of money sufficient to provide to Plaintiff and Class Members identity theft protection services for their respective lifetimes.

31.    Plaintiff and the Class Members remain in the dark regarding exactly what data was stolen, the particular method of disclosure, the results of any investigations, and what steps are being taken, if any, to secure their Private Information going forward. They are further left to speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

32.    Defendant could have prevented the Data Breach by properly securing and encrypting and/or more securely encrypting its servers and systems, generally, as well as the Private Information that it chose to store.

33.    Defendant's negligence in safeguarding that Private Information was exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

34.     Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.6% of U.S.-based workers are compensated on an hourly basis, while the other 44.4% are salaried.[5]

35.     According to the American Time Use Survey, American adults have between 4 to 6 hours of "leisure time" outside of work per day;[6] examples of leisure time include partaking in sports, exercise and recreation; socializing and communicating; watching TV; reading; thinking/relaxing; playing games and computer use for leisure; and other leisure activities.[7] Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

36.     Plaintiff and Class Members are deprived of the choice as to how to spend their valuable free hours and therefore seek remuneration for the loss of valuable time as another element of damages.

***Defendant Failed to Comply with FTC Guidelines***

37.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.[8] To that end, the FTC has issued numerous

---

[5] *Characteristics of minimum wage workers, 2022*, U.S. Bureau of Labor Statistics (Aug. 2023), https://www.bls.gov/opub/reports/minimum-wage/2022/home.htm (last accessed on Aug. 6, 2024).

[6] *Americans have no idea how to use their free time*, Business Insider (Mar. 26, 2024), https://www.businessinsider.com/americans-free-time-leisure-dont-use-television-2024-3 (last accessed on Aug. 6, 2024).

[7] *Table 11A. Time spent in leisure and sports activities for the civilian population by selected characteristics, averages per day, 2022 annual averages*, U.S. Bureau of Labor Statistics (June 22, 2023), https://www.bls.gov/news.release/atus.t11A.htm (last accessed on Aug. 6, 2024).

[8] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf. (last accessed on Aug. 6, 2024).

guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

38.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[9] The guidelines explain that businesses should:

a.    protect the personal customer information that they keep;

b.    properly dispose of personal information that is no longer needed;

c.    encrypt information stored on computer networks;

d.    understand their network's vulnerabilities; and

e.    implement policies to correct security problems.

39.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

40.    The FTC recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[10]

41.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

---

[9] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Oct. 2016), https://bit.ly/3u9mzre (last accessed on Aug. 6, 2024).
[10] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf (last accessed on Aug. 6, 2024).

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

42.     These FTC enforcement actions include actions against providers and partners like Defendant. *See, e.g., In the Matter of Labmd, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

43.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

44.     Despite its alleged commitments to securing sensitive data, Defendant does not follow industry standard practices in securing Private Information.

45.     As shown above, experts studying cyber security routinely identify entities storing vast amounts of sensitive information like Social Security numbers as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

46.     Several best practices have been identified that at a minimum should be implemented by entities like Defendant, including but not limited to, educating all employees on the risks of cyber attacks; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

47.     Other best cybersecurity practices that are standard in such industries include

installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

48.     Upon information and belief, Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls ("CIS CSC"), which are all established standards in reasonable cybersecurity readiness.

49.     Such frameworks are the existing and applicable industry standards. Defendant failed to comply with these accepted standards, thus opening the door to criminals and the Data Breach.

***Plaintiff Melody Mathis's Experiences and Injuries Caused by the Data Breach***

50.     As a prerequisite of being able to obtain services from Defendant, Defendant required individuals to provide their Private Information.

51.     Defendant began notifying Plaintiff Mathis and Class Members about the Data Breach on or around June 23, 2026.

52.     When Defendant finally announced the Data Breach, it deliberately underplayed the severity and obfuscated the nature of the Data Breach. Defendant's Notice of Data Incident fails to adequately explain how the breach occurred, what exact data elements of each affected individual were compromised, and the extent to which those data elements were compromised.

53.    Because of the Data Breach, Defendant inflicted injuries upon Plaintiff Mathis and Class Members. And yet, Defendant has done little to provide them with relief for the damages they suffered.

54.    Defendant obtained Plaintiff Mathis's information as a prerequisite for Plaintiff Mathis to obtain services from Defendant. Defendant collects and maintains personal and sensitive information of its customers, such as Plaintiff Mathis, presumably to provide its services.

55.    Plaintiff Mathis received from Defendant a notice of the Data Breach. This notice is substantively similar to the online notice posted on Defendant's website.

56.    The notice of the Data Breach informed Plaintiff Mathis that the following data types were compromised in the Data Breach: first and last name in combination with Social Security number.

57.    Plaintiff Mathis is a reasonably cautious person and is therefore careful about sharing her sensitive Private Information. As a result, she has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Mathis stores any documents containing Personal Information in a safe and secure location or destroys the documents. Moreover, Plaintiff Mathis diligently chooses unique usernames and passwords for various online accounts, changing and refreshing them as needed to ensure Private Information is as protected as it can be. When it is available, Plaintiff Mathis uses two-factor or multifactor authentication to add an extra layer of security.

58.    Plaintiff Mathis only allowed Defendant to maintain, store, and use her Private Information because of the belief that Defendant would use security measures to protect that Private Information, such as requiring passwords and multi-factor authentication to access

databases storing that Private Information. As a result, Plaintiff Mathis's Private Information was within the possession and control of Defendant at the time of the Data Breach.

59. In the instant that Plaintiff Mathis's Private Information was accessed and obtained by a third party without her consent or authorization, Plaintiff Mathis suffered injury from a loss of privacy.

60. Plaintiff Mathis has been further injured by the damages to and diminution in value of her Private Information—a form of intangible property that was entrusted to Defendant. This information has inherent value that Plaintiff was deprived of when her Private Information was placed on a publicly accessible database, exfiltrated by cybercriminals, and, upon information and belief, later placed for sale on the dark web.

61. The Data Breach has caused Plaintiff Mathis to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

62. The substantial risk of imminent harm and loss of privacy has caused Plaintiff Mathis to suffer stress, fear, and anxiety. Plaintiff Mathis has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Class Face Significant Risk of Present and Continuing Identity Theft***

63. Plaintiff and Class Members suffered injury from the misuse of their Private Information that can be directly traced to Defendant.

64. The ramifications of Defendant's failure to keep Plaintiff's and the Class Members' Private Information secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number,

driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes.

65.     In 2021, 32% of persons aged 16 or older who received breach notification were victims of multiple types of identity theft.[11]

66.     As a result of Defendant's failures to prevent—and to timely detect—the Data Breach, Plaintiff and Class Members suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

      a.    The loss of the opportunity to control how their Private Information is used;

      b.    The diminution in value of their Private Information;

      c.    The compromise and continuing publication of their Private Information;

      d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

      e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

      f.    Delay in receipt of tax refund monies;

      g.    Unauthorized use of stolen Private Information; and

---

[11] Erika Harrell, PhD, *Data Breach Notifications and Identity Theft, 2021*, U.S. Bureau of Justice Statistics (Jan. 2024), https://bjs.ojp.gov/data-breach-notifications-and-identity-theft-2021. (last accessed on Aug. 6, 2024).

h.      The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in their possession.

67.     Stolen PII and PHI (like the Private Information at issue here) is one of the most valuable commodities on the criminal information black market. According to Prey, a company that develops device tracking and recovery software, stolen PII and PHI (like the Private Information at issue here) can be worth up to $2,000.00 depending on the type of information obtained.[12]

68.     The value of Plaintiff's and Class Members' Private Information on the black market is considerable. Stolen information (similar if not identical to the Private Information at issue in this litigation) trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

69.     It can take victims years to spot or identify theft, giving criminals plenty of time to milk that information for cash.

70.     One such example of criminals using PII and/or PHI (like the Private Information at issue here) for profit is the development of "Fullz" packages.[13]

---

[12] Juan Hernandez, *The Lifecycle of Stolen Credentials on the Dark Web*, Prey (Feb. 26, 2024), https://preyproject.com/blog/lifecycle-stolen-credentials-dark-web (last accessed on Aug. 6, 2024).

[13] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz", which are Fullz credentials

71.    Cyber-criminals can cross-reference two sources of PII and/or PHI (like the Private Information at issue here) to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

72.    The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

73.    According to the FBI's Internet Crime Complaint Center (IC3) 2023 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $12.5 billion in losses to individuals and business victims.[14]

---

associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records For Sale in Underground Stolen From Texas Life Insurance Firm*, KREBS ON SEC. (Sep. 18, 2014), https://krebsonsecurity.com/tag/fullz/ (last accessed on Aug. 6, 2024).

[14] *2023 Internet Crime Report*, Fed. Bureau of Investig. (2023), https://www.ic3.gov/Media/PDF/AnnualReport/2023_IC3Report.pdf (last accessed on Aug. 6, 2024).

74. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

75. In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

76. The FTC has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[15]

77. The FTC has issued numerous guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making.[16] According to the FTC, data security requires: (1) controlling access to data sensibly; (2) requiring secure passwords and authentication; (3) storing sensitive information securely and protecting it during transmission; (4) segmenting networks and monitoring who is trying to get in and out; (5) securing remote access to networks; (6) applying

---

[15] *Commissioner Pamela Jones Harbour: Remarks Before FTC Exploring Privacy Roundtable*, FED. TRADE COMMISSION (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last accessed on Aug. 6, 2024).
[16]*Start With Security, A Guide for Business*, Fed. Trade Comm'n (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf. (last accessed on Aug. 6, 2024).

sound security practices when developing new products; (7) ensuring that third-party service providers implement reasonable security measures; (8) putting in place procedures to keep security current and address potential vulnerabilities; and (9) securing paper, physical media, and devices.[17]

78.     According to the FTC, unauthorized PII and PHI disclosures are extremely damaging to consumers' finances, credit history and reputation, and can take time, money, and patience to resolve the fallout.[18] The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTCA.

79.     To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. *See In the matter of Lookout Services, Inc.*, No. C-4326, ¶ 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc.*, No. C-4157, ¶ 7 (Mar. 7, 2006) ("[Defendant] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc.*, No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and

---

[17]*Id.*

[18] *See Taking Charge, What to Do If Your Identity is Stolen*, FED. TRADE COMM'N, at 3 (Jan. 2012), https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last accessed on Aug. 26, 2024).

block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . ."). These orders, which all preceded the Data Breach, further clarify the measures businesses must take to meet their data security obligations. Defendant thus knew or should have known that its data security protocols were inadequate and were likely to result in the unauthorized access to and/or theft of Private Information.

80.     Charged with handling highly sensitive Private Information including individuals' name, address, Social Security number, and/or financial account information, Defendant knew or should have known the importance of safeguarding the Private Information that was entrusted to it. Defendant also knew or should have known of the foreseeable consequences if its data security systems were breached. Defendant nevertheless failed to take adequate cybersecurity measures to prevent the Data Breach from occurring.

81.     Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has exposed the Plaintiff's and Class Members' Private Information to unscrupulous operators, con artists, and outright criminals.

**CLASS ACTION ALLEGATIONS**

82.     Plaintiff brings this class action individually and on behalf of all similarly situated persons under Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4) of the following Nationwide Class (the "Class"):

> All persons in the United States whose Private Information was accessed in the Defendant's Data Breach announced to the public on or about June 23, 2026.

19

83. The Class defined above is readily ascertainable from information in Defendant's possession. Thus, such identification of Class Members will be reliable and administratively feasible.

84. Excluded from the Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or their parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

85. Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

86. Plaintiff satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

87. **Numerosity**. Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown at this time, based on information and belief, the Class consists of the approximately tens of thousands of individuals whose Private Information was accessed and compromised by Defendant's Data Breach.

88. **Commonality**. There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, without limitation:

20

a.   Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.   Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.   Whether Defendant owed a duty to Plaintiff and Class Members alike to safeguard their Private Information;

f.   Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.   Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.   Whether Defendant should have discovered the Data Breach earlier;

i.   Whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

j.   Whether Defendant's delay in informing Plaintiff and Class Members of the Data Breach was unreasonable;

k.   Whether Defendant's method of informing Plaintiff and Class Members of the Data Breach was unreasonable;

l.   Whether Defendant's conduct was negligent;

21

m.    Whether Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

n.    Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

o.    Whether an implied contract existed between Plaintiff and Class Members;

p.    Whether Defendant breached implied contracts with Plaintiff and Class Members;

q.    Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred by Plaintiff and Class Members;

r.    Whether Defendant failed to provide notice of the Data Breach in a timely manner, and;

s.    Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

89.    **Typicality**. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was accessed and compromised in the Data Breach. Moreover, Plaintiff and Class Members were subjected to Defendant's uniformly illegal and impermissible conduct.

90.    **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating complex class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class.

91.    **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that Plaintiff's and Class Members' Private Information was stored

22

on the same computer system and unlawfully exposed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

92.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

93.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

94.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

95.    Likewise, particular issues under Federal Rule of Civil Procedure 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the

23

resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

96.     Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

97.     Plaintiff re-alleges and incorporates by reference paragraphs 1 to 96 of the Complaint as if fully set forth herein.

98.     Defendant required Plaintiff and Class Members to provide Defendant with their Private Information in order to receive Defendant's products and services.

99.     By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer system—and Plaintiff's and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes so they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

100.    The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant holds vast amounts of sensitive information, it was inevitable that unauthorized individuals would at some point try to access Defendant's databases that store that sensitive information, including the Private Information at issue in this litigation.

24

101. After all, Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing Plaintiff's and Class Members' Private Information. Thus, Defendant knew, or should have known, the importance of exercising reasonable care in handling the Private Information entrusted to it.

102. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

103. Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant on the one hand, and Plaintiff and Class Members on the other hand, recognized by common law and existing regulations. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

104. Defendant failed to take appropriate measures to protect Plaintiff's and the Class Members' Private Information. Defendant is morally culpable, given the prominence of security breaches in this industry. Any purported safeguards that Defendant had in place were wholly inadequate, as demonstrated by the Data Breach.

105. Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite known data breaches in this industry, and allowing unauthorized access to Plaintiff's and Class Members' Private Information.

106. The failure of Defendant to comply with industry and regulations evinces Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

107. But for Defendant's wrongful and negligent breach of its duties to Plaintiff and the Class, Private Information would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of Plaintiff's and Class Members' Private Information and all resulting damages.

108. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information. Defendant knew or should have known that its systems and technologies for processing and securing the Plaintiff's and Class Members' Private Information had security vulnerabilities.

109. As a result of this misconduct by Defendant, the Private Information and other sensitive information belonging to Plaintiff and Class Members was compromised, placing them at a greater risk of identity theft and their Private Information being disclosed to third parties without the consent of Plaintiff and Class Members.

110. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised Private Information; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b)

26

remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information; (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives; (viii) the present value of ongoing credit monitoring and identity defense services necessitated by Defendant's data breach; (ix) the value of the unauthorized access to their Private Information permitted by Defendant; and (x) any nominal damages that may be awarded.

111. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses including nominal damages.

112. Defendant's negligent conduct is ongoing, in that it still possesses the Private Information in an unsafe and insecure manner.

113. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Nationwide Class)**

114. Plaintiff re-alleges and incorporates by reference paragraphs 1 to 96 of the Complaint as if fully set forth herein.

115. Defendant had duties arising under the FTCA to protect Plaintiff's and Class Members' Private Information.

27

116. Defendant breached its duties, pursuant to the FTCA and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following: (i) failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information; (ii) failing to adequately monitor the security of its networks and systems; (iii) allowing unauthorized access to Class Members' Private Information; (iv) failing to detect in a timely manner that Class Members' Private Information had been compromised; (v) failing to remove Private Information it was no longer required to retain pursuant to regulations; and (vi) failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

117. Defendant's violation of Section 5 of the FTCA (and similar state statutes) constitutes negligence *per se*.

118. Plaintiff and Class Members are consumers within the class of persons that Section 5 of the FTCA was intended to protect.

119. The harm that has occurred is the type of harm the FTCA was intended to guard against.

120. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

121. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

122.    Plaintiff and Class Members were foreseeable victims of Defendant's violations of the FTCA. Defendant knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and the Class.

123.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised Private Information; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

124.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

125.    Finally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

126.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

127.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 96 of the Complaint as if fully set forth herein.

128.    Plaintiff and Class Members conferred a benefit on Defendant by entrusting their Private Information to Defendant from which Defendant derived profits.

129.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide adequate security.

130.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

131.    Defendant acquired the Private Information at issue in this litigation through inequitable means in that Defendant failed to disclose the inadequate security practices and failed to maintain adequate data security.

132.    If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to disclose their Private Information to Defendant.

133.    Plaintiff and Class Members have no adequate remedy at law.

134.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised Private Information; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures or further entrustment to inadequate third party vendors so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information; (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives; (viii) the present value of ongoing credit monitoring and identity defense services necessitated by Defendant's data breach; (ix) the value of the unauthorized access to their Private Information permitted by Defendant; and (x) any nominal damages that may be awarded.

135.    Plaintiff and Class Members are entitled to restitution and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct, as well as return of their sensitive Private Information and/or confirmation that it is secure. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

31

136.    Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**FOURTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Nationwide Class)**

137.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 96 of the Complaint as if fully set forth herein.

138.    A relationship existed between Plaintiff and Class Members on the one hand, and Defendant on the other, which arose from: (a) Defendant's acceptance of Plaintiff's and Class Members' Private Information; and (b) Defendant's representations of its commitment to protect said Private Information.

139.    Defendant became the guardian of Plaintiff's and Class Members' Private Information. Defendant became a fiduciary, created by its undertaking and guardianship of Plaintiff's and Class Members' Private Information, to act primarily for their benefit. This duty included the obligation to safeguard Plaintiff's and Class Members' Private Information and to timely detect and notify Plaintiff and Class Members in the event of a data breach.

140.    The interests of public policy mandates that a fiduciary duty is imputed given Defendant's acceptance of Plaintiff's and the Class Members' Private Information and Defendant's representations of its commitment to protect said Private Information.

141.    Defendant breached the fiduciary duty that it owed to Plaintiff and Class Members because Defendant failed to act with the utmost good faith, fairness, honesty, the highest degree of loyalty, ultimately failed to protect that Private Information.

142.    Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and Class Members.

32

143.    But for Defendant's breach of fiduciary duty, the damage to Plaintiff and Class Members would not have occurred.

144.    Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and Class Members.

145.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered or will suffer concrete injury, including, but not limited to: (a) actual identity theft; (b) the loss of the opportunity to determine how and when their Private Information is used; (c) the unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing of their Private Information; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession and ensure that it retains vendors who adequately protect Private Information; (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, and repair the impact of the Private Information compromised as a direct and traceable result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (h) nominal damages.

33

146.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

### FIFTH CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Nationwide Class)

147.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 96 of the Complaint as if fully set forth herein.

148.    Through their course of conduct, Defendant on the one hand, and Plaintiff and Class Members on the other, entered into implied contracts for Defendant to implement data security adequate to safeguard Plaintiff's and Class Members' Private Information.

149.    Specifically, Plaintiff and Class Members entered into a valid and enforceable implied contract with Defendant when they availed Defendant's services.

150.    The valid and enforceable implied contracts that Plaintiff and Class Members entered into with Defendant include the promise to protect non-public Private Information given to Defendant or that Defendant creates on its own from disclosure.

151.    When Plaintiff and Class Members provided their Private Information to Defendant, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

152.    Defendant and/or its agents solicited and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

153.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations, and were consistent with industry standards.

34

154.   Class Members who paid money to Defendant reasonably believed and expected that Defendant would use part of those funds to obtain adequate data security.  Defendant failed to do so.

155.   Implicit in the implied contracts, Defendant promised and was obligated to: (a) take reasonable steps to safeguard that Private Information, including through proper vetting of third party vendors to whom Private Information is provided; (b) prevent unauthorized disclosure of the Private Information; (c) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; (d) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses; and (e) retain or allow third parties to retain Private Information only under conditions that kept such information secure and confidential.

156.   In accepting the Private Information, Defendant understood and agreed that it was required to reasonably safeguard and otherwise ensure protection of the Private Information from unauthorized access or disclosure.

157.   Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract requiring Defendant to keep their Private Information secure.

158.   Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied promise to monitor and ensure that the Private Information entrusted to it would remain protected by reasonable data security measures and remain confidential, either in the hands of Defendant or anyone under Defendant's control or agency.

159.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant by providing their Private Information at Defendant's request.

160.    Defendant materially breached its contractual obligation to protect the non-public Private Information Defendant gathered when the sensitive information was accessed by unauthorized persons during and after the Data Breach.

161.    Defendant materially breached the terms of the implied contracts. Defendant did not maintain the privacy of Plaintiff's and Class Members' Private Information as evidenced by its notifications of the Data Breach to Plaintiff and other Class Members. Specifically, Defendant did not comply with industry standards, standards of conduct embodied in statutes like Section 5 of the FTCA, or otherwise protect Plaintiff's and the Class Members' Private Information, as set forth above.

162.    The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

163.    As a direct and proximate result of Defendant's breach of these implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

164.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

165.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, at minimum (and to be expanded following discovery): (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems

36

and monitoring procedures; and (c) immediately provide adequate credit and identity monitoring to all Class Members.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

A. An Order certifying this action as a class action and appointing Plaintiff as Class Representative;

B. A mandatory injunction directing Defendant to adequately safeguard Plaintiff's and Class Members' Private Information by implementing improved security procedures and measures, including but not limited to an Order:

    i. Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii. Requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii. Requiring Defendant to delete and purge Plaintiff's and Class Members' Private Information unless Defendant can justify reasonable bases for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv. Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

    v. Requiring Defendant to engage independent third-party security auditors and

internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

vi. Prohibiting Defendant from maintaining Plaintiff's and Class Members' Private Information on a cloud-based database until proper safeguards and processes are implemented;

vii. Requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

viii. Requiring Defendant to conduct regular database scanning and securing checks;

ix. Requiring Defendant to monitor ingress and egress of all network traffic;

x. Requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, and protecting the Plaintiff's and Class Members' Private Information;

xi. Requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xii. Requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor

38

Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and

xiii.    Requiring Defendant to meaningfully educate all Class Members about the threats that they face because of the loss of that confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

C.    A mandatory injunction requiring that Defendant provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of Private Information to unauthorized persons;

D.    A mandatory injunction requiring Defendant to purchase credit monitoring and identity theft protection services for each Class Member for life;

E.    Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Private Information;

F.    An award of damages, including actual, nominal, consequential damages, and punitive, as allowed by law in an amount to be determined;

G.    An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and any other interest as permitted by law;

H.    Granting the Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial;

I.    For all other Orders, findings, and determinations identified and sought in this Complaint; and

J.    Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for any and all issues in this action so triable as of right.

Respectfully Submitted,

*/s/ K. Clancy Boylan*
Kevin Clancy Boylan
Attorney ID: 314117
**MORGAN & MORGAN**
**PHILADELPHIA, PLLC**
2005 Market Street, 6th Floor
Philadelphia, Pennsylvania 19103
T: (215) 446-9795
cboylan@forthepeople.com


RONALD PODOLNY*
ronald.podolny@forthepeople.com
JAYDEN MOUGIN*
jayden.mougin@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 275-5272
Fax: (813) 222-4736

***Pro hac vice forthcoming.**
**Counsel for Plaintiff and the Class**

40